María Ramos, demandante y apelante, *v.* Manuel Avilés y Juan Romero Agosto, demandados y apelados.

Núm. 8346.—*Sometido:* Mayo 22, 1941. *Resuelto:* Mayo 27, 1941.

*A. Casanova Prats,* abogado de la apelante; *G. Benítez Gautier* y *J. Benítez Gautier,* abogados de los apelados.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Por documento privado suscrito ante el Notario Sr. Juan Lastra, la demandante compró al demandado Manuel Avilés una casa y casilla en Santurce, por precio de $260 a pagarse así: $100 que el vendedor recibió al otorgarse el documento, y los $160 restantes, que recibiría al entregar la casa a la compradora, para lo cual se fijó un plazo de quince días a partir de la fecha del contrato. Habiendo transcurrido con exceso el plazo convenido para la entrega sin que ésta se hiciera, se radicó la demanda de desahucio en este caso, alegando la demandante ser dueña del mencionado inmueble que describe, que el demandado se había obligado a entregarlo a la demandante dentro del plazo anteriormente indicado, sin que hasta la fecha de la demanda lo hubiera hecho, y que el demandado lo venía ocupando contra la voluntad de la demandante, sin pagar canon o merced alguna, terminando con súplica de que en su oportunidad se decrete el lanzamiento del demandado, con costas y honorarios de abogado.

Contestó el demandado Avilés. Aceptó la celebración del contrato en los términos expresados, pero alegó que la demandante le debía aun el precio aplazado de $160 y que de los $100 que confesó haber recibido en el momento de otorgarse el contrato, sólo había recibido $50, que la demandante entregó al demandado en cinco billetes de $10 y no de $20 como había creído el demandado, defecto que advirtió al día siguiente y de lo cual notificó a la demandante tres días después de celebrarse el contrato.

En el juicio la demandante presentó en evidencia el contrato de compraventa, admitió que no había pagado al demandado los $160 del precio aplazado, e insistió en que había satisfecho los $100 en cinco billetes de $20 cada uno, que el demandado guardó y rehusó contar en su presencia, a pesar de los requerimientos que a ese efecto le hicieron tanto la demandante como el Notario Sr. Lastra. Que un día antes de vencerse los quince días antes mencionados, la deman-

dante fué a la casa del demandado para urgirle que entregara el inmueble y que fué entonces que por primera vez el demandado le comunicó que sólo había recibido $50 en vez de los $100 que se indicaban en el contrato, insistiendo siempre la demandante en que dicha suma le había sido entregada en su totalidad.

En la opinión que sirvió de base a la sentencia que desestimó la demanda, la corte inferior, luego de reseñar las alegaciones y la prueba, fundamenta su fallo así:

"Siendo tales los hechos establecidos por la prueba, que refieren una controversia sobre si se pagó o no el precio de la compraventa, la corte no se considera en posición de poder resolver que la demandante sea dueña de la finca, a los fines del procedimiento sumario de desahucio.

"En el caso de *Vallés* v. *Rivera,* reportado en 40 D.P.R. 160, se alegó por la demandada que si bien consintió en que se pusiera una cruz por su firma en el contrato que se ofreció para probar el título del demandante, obedeció a que estaba en la creencia de que lo que firmaba era un pagaré, y el Tribunal resolvió expresándose en los términos siguientes:

" 'La pureza del procedimiento exige y la constante jurisprudencia de esta Corte ha sentado, que cuestión semejante no debe debatirse en un juicio sumario de desahucio.'

"Aún cuando en el caso que ahora estamos resolviendo no se trata de haber firmado una cosa por otra, sin embargo, se informa que no se ha pagado el precio convenido, existiendo, por tanto, una controversia sobre un elemento esencial del contrato de compraventa, de que se dilucide el cual depende que el demandado venga o no obligado a entregar la casa, y que entonces pueda o no titularse dueña de la casa la demandante.

"Entendemos que, como en el caso de *Vallés* v. *Rivera,* tal controversia no puede dilucidarse en este procedimiento sumario de desahucio, sino en otro procedimiento que bien puede ser una acción sobre incumplimiento de contrato o sobre rescisión del mismo, según mejor convenga a la parte reclamante."

La sentencia fué dictada el 18 de febrero de 1941 y notificada a la demandante tres días más tarde. Un día

antes de habérsele notificado la sentencia, la demandante presentó moción de reconsideración, señalándose la vista de la misma para el 28 de dicho mes, fecha en que, luego de oídas las partes, fué desestimada por los fundamentos consignados en la citada opinión.

Notificada esta resolución a la demandante el 3 de marzo último, cuatro días después presentó escrito de apelación.

Dos mociones ha radicado el demandado apelado en oposición a este recurso. En la primera solicita que se desestime por haberse radicado el escrito de apelación fuera de término. En la segunda, suplica se confirme la sentencia porque basándose ésta en la existencia de un conflicto de título, no procede su revocación a menos que se demuestre que al apreciar la prueba la corte actuó movida por pasión, prejuicio o parcialidad.

Procede denegar la primera moción, porque antes de expirar el término para apelar, la demandante solicitó la reconsideración de la sentencia y esta moción fué desestimada después de señalar una vista y oír a las partes, habiéndose interpuesto recurso cuatro días después de notificarse a la demandante esa última resolución.

■ La segunda también debe ser denegada. Al resolverse en un pleito de desahucio que se ha suscitado un conflicto de título que no debe ser resuelto dentro de dicho procedimiento, la corte no dirime una cuestión de hecho, sino de derecho, y por consiguiente no es indispensable probar que el juez, en la apreciación de la prueba, actuara movido por pasión, prejuicio o parcialidad, pues pudo haberla apreciado correctamente y equivocarse en la aplicación de la ley.

■ Pasaremos ahora a considerar el recurso en su fondo.

Más que un conflicto de título es inexistencia de causa de acción lo que resulta de la prueba en este caso. La obligación del demandado de entregar la casa y la de la deman-

dante de pagar el precio aplazado, son obligaciones recíprocas. Tratando Manresa de esa clase de obligaciones dice:

"La bilateralidad o reciprocidad de las obligaciones supone desde luego que los dos sujetos, términos necesarios de la relación obligatoria, sean a la vez deudores y acreedores el uno del otro. Pero no basta con esto: significa aquella nota de estas obligaciones algo más, una reciprocidad tan perfecta, que haga proceder ambas relaciones de una misma causa, siendo también cada obligación supuesto de la correlativa, no concibiéndose, en suma, la una sin la otra. Así, por ejemplo, puede una persona ser deudora de otra por consecuencia de un mandato, y ser acreedora de la misma por razón de un préstamo; y nadie dirá que tales obligaciones son recíprocas, puesto que son y se conciben independientes, y proceden de distinta causa. Aun más: celebrado un contrato de préstamo comodato, tiene el comodatario la obligación de restituir, o puede tener el comodante la de abonar a aquél gastos hechos en la cosa contractual, y, sin embargo, no se da en tales obligaciones la nota de reciprocidad en su genuino sentido, puesto que, distinguiendo bien en aquéllas, se ve que no tienen rigurosamente su origen en una misma, *idéntica* causa, y, sobre todo, que no surgen a la vez, como necesarias ambas y fundamento mutuo la una para la otra. En cambio si percibimos con toda evidencia esa nota de reciprocidad comparando en la compraventa las obligaciones de comprador y de vendedor para entregar respectivamente el precio y la cosa; o en el arrendamiento las de acreedor y arrendatario, para permitir el uno el uso de la cosa arrendada, y para pagar el otro la merced convenida, etc., etc., y es que en todos esos casos no podemos, sin desnaturalizar cada obligación, imaginarla sin la otra." 8, Comentarios al Código Civil, 148, 149.

Siendo recíprocas dichas obligaciones, les es de aplicación el último párrafo del artículo 1053 del Código Civil (ed. 1930), que dice:

"En las obligaciones recíprocas ninguno de los obligados incurre en mora si el otro no cumple o no se allana a cumplir debidamente lo que le incumbe. Desde que uno de los obligados cumple su obligación, empieza la mora para el otro."

No habiendo incurrido en mora el demandado en este caso, toda vez que no se le pagó el resto del precio aplazado,

prescindiendo de decidir por ahora, por no ser necesario a los efectos de esta opinión, si en efecto la demandante pagó o no la totalidad de los $100 de que se ha hecho referencia, no tiene la demandante compradora el derecho de exigir al demandado que le entregue la cosa comprada. Para que tal derecho exista, precisa que la demandante cumpla primero su obligación, pagando previamente el precio aplazado o acompañando su importe a la demanda de desahucio, a disposición del demandado, para serle entregado una vez se ejecute la sentencia o al acreditarse la entrega del inmueble. Véase a este efecto la sentencia del Tribunal Supremo de España de 4 de enero de 1866, que sostiene que ''el que no cumple la obligación que se impuso en su compromiso, *no tiene derecho a exigir, siendo mutuos y correlativos los deberes, que la otra parte haga lo que se comprometió a hacer.''* (Bastardillas nuestras.)

*Por lo expuesto, procede la confirmación de la sentencia apelada.*