El ESTADO LIBRE ASOCIADO DE PUERTO RICO en interés del menor R. M. R., apelante este último. [1]

Número: 12903. Resuelto: 28 de julio de 1961.

---

[1] Para cumplir con las disposiciones de la Regla 5.1 de las de Procedimiento para los Asuntos Cubiertos por la Ley núm. 97 de 23 de junio de 1955 (Menores) adoptadas por el Tribunal Supremo de Puerto Rico el 30 de enero de 1959 (34 L.P.R.A. Ap. R.5.1), y en vigor desde el 30 de julio del mismo año, hemos cambiado el título con que se inició la querella de este caso ante el Tribunal Superior. Igualmente hemos omitido el nombre del menor y de todas las personas afectadas por requerirlo así la Regla 14(e) (34 L.P.R.A. Ap. R. 14(e)).

*Gaspar Gerena Bras,* abogado del apelante; *Arturo Estrella, Procurador General Interino* y *Rodolfo Cruz Contreras, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 29 de julio de 1958 el menor R . . . M . . . R . . . inició un recurso de apelación ([2]) ante este Tribunal Supremo

---

([2]) El recurso de apelación fue interpuesto bajo las disposiciones del artículo 14 de la Ley de Menores. A partir del 31 de julio de 1958, fecha

244

para revisar la resolución dictada por el Juez de Menores a tenor con las disposiciones del artículo 4 de la Ley núm. 97 de 23 de junio de 1955 (Leyes, pág. 505, 34 L.P.R.A. secs. 2001 a 2015), a la cual nos referiremos en adelante como Ley de Menores, dando traslado de su caso para que se tramite como si se tratara de un adulto. El artículo mencionado dispone que "[C]uando se impute a un niño mayor de 16 años de edad y menor de 18 años de edad la comisión u omisión de un acto y tal comisión u omisión constituiría delito grave si en ella incurriere un adulto, el Juez, después de investigar el caso y concluir que entender en dicho asunto bajo las disposiciones de esta ley sería contrario al bienestar del niño o de la comunidad, podrá darle traslado para que se tramite el caso como si se tratara de un adulto".

En 3 de mayo de 1957 se presentaron ante el Tribunal Superior, Sala de Menores de San Juan, tres querellas contra el menor R . . . M . . . R . . . imputándole "faltas" por infracción a las disposiciones de varios artículos del Código Penal de Puerto Rico.([3]) Inmediatamente se ordenó que la División de Servicios Sociales hiciese una investigación sobre la conducta y actitud social del menor en el seno de la comunidad. A petición del padre del menor se le refirió a la Clínica de Higiene Mental para examen y se diagnosticó su con-

---

de vigencia de éstas, y conforme a la Regla 14 de las de Procedimientos para Asuntos de Menores, el recurso procedente es el determinado por la sección 11 de la Ley núm. 11 de 24 de julio de 1952 (4 L.P.R.A. sec. 37), según enmendada por la Ley núm. 115 de 26 de junio de 1958. Cf. *Andino* v. *Fajardo Sugar Co.*, 82 D.P.R. 85 (1961); *Sierra* v. *Pedro A. Pizá, Inc.*, 82 D.P.R. 303 (1961). Como el presente recurso se inició mediante la presentación del escrito de apelación en 29 de julio de 1958, no es necesario que se radique un recurso de revisión según establecimos en *Bermúdez* v. *Ortiz*, 80 D.P.R. 707 (1958).

([3]) El artículo 1 de la Ley de Menores define "querella" como el escrito que se presente en el tribunal describiendo la *"falta"* que se impute a un niño, y la Regla 1(*g*) indica que "falta" significará "la imputación que se haga a un menor por la infracción o tentativa de infracción de cualquier ley estatal u ordenanza municipal o por estimársele incorregible". Las imputaciones en el presente caso, de haber sido cometidas por un adulto, constituirían acusaciones por delitos de asesinato en primer grado, portación ilegal de armas y no inscripción de armas.

ducta como "desorden de la personalidad". El psiquiatra Dr. A. Flores Gallardo dictaminó "que no hay indicios de que este menor esté padeciendo de desorden mental". Se rindió un extenso informe por la trabajadora social Beatriz M. Cruz sobre la familia del menor, la situación en el hogar, y otros detalles relacionados con su vida y ambiente en que se ha desarrollado desde su nacimiento. Con vista de todos estos informes se convocó al menor, a sus padres y al abogado que hasta entonces le había representado, para que compareciera a una vista el día 20 de junio y mostraran causas por las cuales el tribunal no debía renunciar a su jurisdicción para entender en las querellas y transferir las mismas al tribunal competente para que se le juzgare como adulto.

Celebrada la vista a que se ha hecho referencia, el tribunal a quo renunció a su jurisdicción y en su resolución de 12 de agosto de 1957 expresó que "luego de practicarse una investigación completa alrededor de las circunstancias en que se realizaron los hechos que se le imputan al menor en las querellas y a la luz de todo lo revelado en la investigación fiscal, y el estudio social realizado, el Tribunal, llega a la conclusión de que este menor debe ser mantenido bajo la autoridad de El Estado por mayor tiempo que el que le falta a este menor para cumplir sus 21 años de edad si al ser procesado como adulto por los hechos que se le imputan resultare convicto de los mismos"; y añadió que "[T]ambién ha considerado el Tribunal, con vista de las declaraciones juradas que obran en el expediente que la personalidad de este menor está poseída de rasgos tales de conducta antisocial que de recluirse en una de las instituciones que actualmente tiene el Departamento de Salud para la orientación y reforma de menores constituiría un grave riesgo para la disciplina, orden y estabilidad de los demás menores allí recluidos". En consecuencia, ordenó que se iniciara un proceso contra el menor, y en cumplimiento de ello se procedió por el Fiscal de Distrito a presentar en 21 de agosto las correspondientes acusaciones.

Seis meses y tres días después de haber sido notificada la anterior resolución, el menor, representado por su actual abogado, presentó una moción que intituló "sobre modificación de resolución", interesando se dejara sin efecto la misma y se readquiriera jurisdicción en el asunto.[4] El tribunal señaló una vista, y finalmente en 16 de julio de 1958 dictó una resolución en la cual hizo constar que consideraba "que no se había aducido ninguna razón fundamentalmente sustancial que no se hubiese tomado en consideración previamente", y por tanto, declaró sin lugar la reconsideración solicitada. Tres errores se señalan por la parte apelante.

Antes de considerar los errores apuntados es preciso que determinemos si este Tribunal tiene jurisdicción para entender en el recurso interpuesto.

---

[4] Los fundamentos aducidos en esta moción fueron los siguientes:

"('A') porque la resolución del 12 de agosto de 1957 de este Hon. Tribunal viola los derechos fundamentales del menor al
- (a) negarle la igual protección de las leyes
- (b) establecer discrimen contra dicho menor por su condición social;
- (c) al impedir que el Estado preste al niño en este caso servicios no educativos establecidos por ley para protección y bienestar de la niñez;
- (d) al negar al niño en este caso que goce de la presunción de inocencia a que tiene derecho.

(Art. II—incisos 1, 5, 7 y 11 de la Constitución del Estado Libre Asociado de P. R.)

('B') ———Porque la investigación hecha por los Oficiales probatorios juveniles y trabajadores sociales adscritos al Tribunal para que el Hon. Juez pudiera determinar si el interés de la comunidad o del niño justificaban su intervención, fue hecha bajo la presión de una campaña de prensa prejuiciada y hostil a los mejores intereses del menor y la histeria pública que desarrolló dicha campaña, afectó el juicio, la fuente de información y la libre y serena actitud mental necesaria para una investigación imparcial;

('C') Que dicha investigación está viciada de nulidad, así como la resolución tomada por la Hon. Corte, porque las violaciones a la sección 2007 del T. 34 L.P.R.A., durante el arresto del menor, que dieron lugar a obtención de pruebas en violación de los derechos constitucionales del menor y la cual prueba fue tomada en consideración por los trabajadores sociales al hacer su informe, así como el clima general en que se desarrolló dicha investigación, son contrarias a los propósitos de las secciones 2001 a 2015 del T. 34—L.P.R.A."

■ El artículo 11 de la Ley de Menores (34 L.P.R.A. sec. 2011) expresamente indica que "ningún procedimiento, orden o *resolución* del juez conforme a las disposiciones de esta ley con relación a un niño se considerará *de naturaleza criminal*". Esta disposición responde a la filosofía enunciada en la exposición de motivos relacionados con el problema de la llamada delincuencia juvenil y de los niños desajustados y abandonados, y que subraya la responsabilidad del Estado en cuanto a las funciones inherentes a su condición de "parens patriae", que no considera al niño como delincuente salvo en el caso específico en que el bienestar de la comunidad o del niño requiera que se le trate como adulto. Es por eso que las infracciones de las leyes penales cometidas por los menores se denominan faltas y no delitos, y que la consecuencia inmediata sea la de colocar al niño bajo tratamiento adecuado en lugar de considerársele como un convicto común. ([4a])

Debido precisamente a la filosofía antes expuesta y que informa toda esta legislación de tribunales juveniles ha sido establecido uniformemente por la jurisprudencia americana que tales procedimientos no son causas criminales. No es necesario que hagamos un acopio de citas específicas para sostener esta proposición y meramente nos remitiremos al apéndice A que aparece en la opinión emitida por la Corte de Apelaciones del Distrito de Columbia en *Pee* v. *United States,* 274 F.2d 556, 561 (1959); Caldwell, *The Juvenile Court: Its Development and Some Major Problems,* 51 J. Crim. L., Crim. & P.S. 493 (1961); *"Exclusive" Jurisdiction of the Juvenile Court,* 59 W. Va. L. Rev. 362 (1957); Herman, *Scope and Purpose of Juvenile Court Jurisdiction,* 48 J. Crim. Law & Crim. 590 (1958). De ahí que se haya sostenido que las ga-

---

([4a]) A pesar de que la prohibición contra la aprobación de leyes *ex post facto* se refiere únicamente a estatutos de naturaleza criminal (*Calder* v. *Bull,* 3 Dall. 386, 393 (1798); *Bankers Trust Co.* v. *Blodgett,* 260 U.S. 647, 652 (1923)), la aplicación de la misma a los procedimientos de menores que hicimos en *Pueblo* v. *Andújar,* 80 D.P.R. 822 (1958) se justifica como parte del "trato justo" que se le reconoce a los menores bajo estos estatutos especiales.

rantías constitucionales que puede reclamar un niño en estos procedimientos se determinan de los requisitos del debido procedimiento y trato justo, y no de la aplicación directa de las diversas cláusulas constitucionales que garantizan tales derechos en procedimientos criminales ordinarios.(⁵) *Shioutakon* v. *District of Columbia*, 236 F.2d 666 (1956) ; Powell, *Constitutional Safeguards in Juvenile Courts*, 35 N. Dame Law 220 (1960) ; Regan *Constitutional Rights and the Juvenile Court*, 5 Villanova L. Rev. 107 (1959) ; *Juvenile Courts —Constitutional Rights and Rules of Evidence Applicable*, 57 W.Va. L. Rev. 225 (1955) ; Geis, *Publicity and Juvenile Court Proceedings*, 30 Rocky Mt. L. Rev. 101 (1957) ; Ziegler, *Right to Counsel in Juvenile Courts*, 54 Mich. L. Rev. 1000 (1956) ; *Procedural Safeguards in Juvenile Courts*, 41 Minn. L. Rev. 701 (1957) ; Caskel, *Applicability of Constitutional Safeguards and Rules of Evidence to Proceedings in Juvenile Courts*, 41 Cornell L.Q. 147 (1955).

Se trata pues de un procedimiento de naturaleza civil, y la apelación de las resoluciones del tribunal se rige hasta el 31 de julio de 1958 por las disposiciones pertinentes del Código de Enjuiciamiento Civil, o sea por los artículos 292 y siguientes de dicho cuerpo legal (32 L.R.R.A. sec. 1251 y sigtes.). *Hernández* v. *Corte Municipal*, 69 D.P.R. 887 (1949). A partir de la fecha indicada el trámite para traer ante nuestra consideración las resoluciones dictadas en casos de menores se rige por la sección 11 de la Ley de la Judicatura y las

---

(⁵) En relación con algunas garantías constitucionales específicas, véanse, a) sobre doble exposición, *Moquin* v. *State*, 140 A.2d 914 (Md. 1958) ; *People* v. *Silversteni*, 262 P.2d 656 (Cal. 1953) ;*In re Santillanes*, 138 P.2d 503 (N.M. 1943) ; b) sobre auto incriminación, *In re Holmes*, 109 A.2d 523 (Pa. 1954), cert. denegado 348 U.S. 973 (1955) ; *People* v. *Lewis*, 183 N.E. 353 (N.Y. 1932) ; *In re Dargo*, 183 P.2d 282 (Cal. 1947) c) sobre juicio público y rápido, *In re Mont*, 103 A.2d 460 (Pa. 1954) ; *State* v. *Cronin*, 56 So.2d 242 (La. 1951) ; d) sobre el derecho a asistencia legal, *People ex rel Weber* v. *Fifield*, 289 P.2d 303 (Cal. 1955) ; *Swann* v. *District of Columbia*, 152 A.2d 200 (1959) ; e) sobre derecho a fianza, *In re Magnuson*, 242 P.2d 362 (1952) ; *Espinosa* v. *Rice*, 188 S.W.2d 576 (Texas 1945) ; f) sobre derecho a contrainterrogar los testigos, *In re Holmes*, 109 A.2d 523 (Pa. 1954).

Reglas 52 a 54 de las de Procedimiento Civil, con las limitaciones a que se refiere la Regla 14 de las de Procedimientos en Casos de Menores.(⁶)   Al igual que en otros casos, en ausencia de disposiciones específicas en el estatuto especial, debemos presumir que cuando el legislador se refirió a la apelación de las órdenes y resoluciones que se dictaren en estos procedimientos, meramente se refirió al trámite ordinario provisto para las sentnecias en acciones civiles. *Andino* v. *Fajardo Sugar Co.*, 82 D.P.R. 85 (1961) ; *Asociación Cooperativa* v. *Navarro*, 70 D.P.R. 929 (1950) ; *Sosa* v. *Tribunal de Distrito*, 70 D.P.R. 62 (1949) ; *Angleró* v. *Trigo*, 48 D.P.R. 194 (1935).   Por tanto, es aplicable la norma sobre interrupción del término para apelar mediante la presentación de una moción de reconsideración, así como la forma de computar

---

(⁶) Dicha regla lee como sigue:
"REGLA 14.   DE LA REVISIÓN DE ÓRDENES Y RESOLUCIONES FINALES.

"El Tribunal Supremo revisará la orden o resolución final dictada por el juez con relación a cualquier menor bajo las disposiciones de la ley de acuerdo, en todo lo que fuere posible, con lo preceptuado por las secs. 7 y 14 de la Ley núm. 11, aprobada en 24 de julio de 1952, titulada 'Ley de la Judicatura del Estado Libre Asociado de Puerto Rico', según enmendada [4 L.P.R.A. secs. 35 y 37], y con lo dispuesto por las Reglas de Procedimiento Civil núms. 53.1, (a), (b) y (e), 53.2, 53.3, 53.5, 54.1, 54.2, 54.3, 54.4, 54.5, 54.6, 54.7, 54.8, 54.9, 54.10, 54.11(a), 54.12 y 54.13, sujeto a las siguientes modificaciones en los casos de querellas:

(a) Se revisará dicha orden o resolución final a nombre del menor y a instancia de su padre, tutor, encargado, amigo interesado, o del director del departamento o agencia encargados de su custodia.

(b) El escrito de apelación o de revisión se notificará al Secretario de Justicia, y en su caso, al padre, tutor, encargado, amigo interesado, director del departamento o agencia encargados de la custodia del menor y a cualquier parte interventora en el asunto.

(c) La falta de notificación del escrito no será motivo para la desestimación del recurso, pero el Tribunal Supremo podrá exigir que se haga su notificación a las personas mencionadas y a cualquier otra que a su juicio deba ser oída en interés del menor.

(d) La interposición de un recurso de apelación o de revisión no suspenderá los efectos de la orden o resolución a que el mismo se refiera a menos que el Tribunal Supremo decrete lo contrario.

(e) Las decisiones del Tribunal Supremo que se publiquen omitirán el nombre y apellidos del menor y de todas las personas afectadas, y cualquier otro dato por el cual pueda identificarse al menor o a las personas afectadas."

el término para interponer el recurso mediante la presentación del escrito de apelación. *Ramos* v. *Avilés*, 58 D.P.R. 726 (1941); *Fabián* v. *Rodríguez*, 53 D.P.R. 448 (1938).

■■ Resulta pues claro que la resolución original(⁷) dictada en 12 de agosto de 1957 mediante la cual se trasladó el caso del apelante al Tribunal Superior para ser procesado y juzgado como adulto, era final y firme a la fecha en que se presentó la moción sobre "modificación" de resolución, bien se considerare ésta como una moción de reconsideración o como una solicitud para que se dejara sin efecto la misma. Ello es así porque había transcurrido en exceso el término de 15 días para radicar la primera (artículo 292 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1251), *Reyes* v. *Reyes*, 76 D.P.R. 284 (1954); *Meléndez* v. *Tribunal Superior*, 77 D.P.R. 535 (1954), o el de seis meses provisto por la Regla 60(b) de las de Enjuiciamiento Civil de 1943.(⁸) *Great American Insurance Co.* v. *Corte*, 67 D.P.R. 564 (1947).

■ Finalmente, deseamos expresar que en vista de que el juez señaló la moción y celebró una audiencia durante la cual se recibió prueba y aun cuando consideráramos el presente recurso como un certiorari para revisar una resolución dictada después de la disposición final del asunto por el Tribunal de Menores, la facultad del juez que entiende en estos asuntos para renunciar su jurisdicción y disponer que se tramite como si se tratara de un delito cometido por un adulto es discrecional, y que los factores que debe considerar para hacer tal determinación son los que el legislador incorporó en el artículo 4, o sea, el bienestar del niño o de la comunidad, para cuya

---

(⁷) Debido a la naturaleza especial del procedimiento establecido en la Ley de Menores, las actuaciones y providencias que se dicten por el Tribunal no se denominan sentencias, sino órdenes y resoluciones. Sin embargo, cualquier resolución que se pronuncie que efectivamente ponga fin al asunto ante el Tribunal de Menores, equivale a la sentencia final sujeta a revisión o apelación, según sea el caso.

(⁸) Un ligero examen de las alegaciones de la moción sobre "modificación" de sentencia demostrará que los fundamentos aducidos no pueden considerarse como "error, inadvertencia, sorpresa o negligencia excusable".

determinación la misma ley autoriza la consideración de informes de oficiales probatorios juveniles y trabajadores sociales adscritos al tribunal. Solamente en el caso de un claro abuso de discreción estaríamos justificados en intervenir en la discreción del juez de los asuntos de menores. Estamos satisfechos, después de una lectura detenida del expediente de este caso, que lejos de haber incurrido en un abuso de discreción, el juez dio adecuada y cuidadosa atención a todos los factores envueltos en el caso y que su decisión respondió al deseo de proteger los mejores intereses de la sociedad. Es encomiable la escrupulosidad de sus actuaciones.

*Se desestimará el recurso de apelación interpuesto, por falta de jurisdicción.*

